UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAURIE NADEAU, et al.,

    Plaintiffs,

v.

WEALTH COUNSEL LLC, et al.,

    Defendants.

No. 2:17-cv-00561-MCE-AC

ORDER

This matter is before the court on plaintiffs' motion to compel, which was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(1). The matter came on for hearing on June 6, 2018. ECF No. 40. Joseph E. Maloney and Alan Jay Reinach appeared for plaintiffs, and Christopher S. Alvarez appeared for defendants. Upon review of the briefing, relevant documents, and arguments at hearing, the court GRANTS plaintiffs' motion in largest part and orders supplemental responses to Requests for Production ("RFP") Nos. 2-7 and 22.

**I.    Relevant Background**

Plaintiffs Laurie Nadeau, Robyn Coffin, and Dagny Magelssen filed their initial complaint on March 15, 2017. ECF No. 1. A First Amended Complaint ("FAC") was filed on December 12, 2017. ECF No. 28. Defendants WealthCounsel LLC and Insperity, Inc. separately answered on December 27, 2017. ECF Nos. 29, 30. A stipulated protective order was adopted by this court on May 1, 2018. ECF No. 33.

The FAC alleges, in relevant part, that defendant WealthCounsel, LLC, is a Nevada corporation whose principal place of business is Draper, Utah. ECF No. 28 at 1. WealthCounsel is in the business of providing software, marketing and other support to attorneys practicing in the field of estate planning. Id. Plaintiffs allege defendant Insperity is a Texas Corporation in the business of providing human resources services to client employers. Id. at 2. WealthCounsel is an Insperity client. Id. Plaintiffs were employees of WealthCounsel, working remotely from home offices (Nadeau in California, Coffin in Oregon, and Magelssen in Washington) for the company's sales division. Id. at 2-3.

In March or April of 2013, WealthCounsel appointed Brett Pinegar as its Chief Executive Officer. Id. at 3. Plaintiffs allege Pinegar is a prominent Mormon and an official in the Mormon church. Pinegar established the office in Draper, Utah, near Salt Lake City. Id. In November of 2014, Pinegar replaced John Logan, who had been the Vice President of Sales and was the immediate supervisor of Nadeau and Coffin, with Karl Clegg, a Mormon. Id. at 4. Plaintiffs allege Pinegar embarked on pattern and practice of hiring male Mormons, and favoring those new hires over existing, non-Mormon female employees. Id. at 3. In April 2015, another employee named Rose Titus was injured and temporarily unable to work. Id. at 4. When she was ready to return to work, she was informed she had been replaced by a male Mormon. Id. In July of 2015, Titus deemed herself constructively discharged and resigned. Id.

In January of 2016, Titus filed a complaint with the federal Equal Employment Opportunity Commission ("EEOC"). Id. at 5. WealthCounsel then assigned Tamira Ryan, an employee of Insperity, to interview other employees acting as WealthCounsel's internal EEO compliance officer. Id. Ryan interviewed each plaintiff by phone in May of 2016. Id. Each plaintiff expressed her view that management had seized on the excuse of Titus's temporary disability to replace her with a male Mormon. Plaintiffs explained that their opinions were informed by their own experiences witnessing what they deemed to be management's discriminatory practices towards them in pay and other terms and conditions of employment, and made allegations of gender and religious discrimination. Id.

////

| | |
|---|---|
| 1 | Plaintiffs allege that after Ryan interviewed them in May of 2016 but before September |
| 2 | 26, 2016, WealthCounsel's management was informed of the substance of their comments to |
| 3 | Ryan, including their opposition to management's pattern and practice of discrimination on the |
| 4 | basis of religion and gender. Id. On September 26, 2016, Pinegar and Clegg instructed Nadeau, |
| 5 | Coffin and Magelssen that they must move to Utah to work on site at the WealthCounsel office |
| 6 | by October 10, 2016, or they would be fired. Id. Plaintiffs assert that there is no reasonable way |
| 7 | they could have agreed to move to Utah at all, and certainly not by October 10, 2016. Id. All |
| 8 | three refused and were fired effective October 5, 2016, five days prior to the required moving |
| 9 | date. Id. |
| 10 | Defendant WealthCounsel denies it retaliated against plaintiffs or that their interviews |
| 11 | with Ryan played any part in management's decision to require them or the rest of the sales unit |
| 12 | to work from WealthCounsel's facility in Utah. ECF No. 37 at 6. Defendant contends the |
| 13 | decision to consolidate and relocate the sales unit was a business decision based on a |
| 14 | recommendation from a study of WealthCounsel's marketing and sales efforts by an independent |
| 15 | consultant, Strategy5710. Id. Defendant denies that Clegg or Pinegar or the members of |
| 16 | WealthCounsel's board of directors considered plaintiffs' interviews with Ryan or any alleged |
| 17 | protected activity when they made the decision to consolidate and relocate the sales unit to Utah. |
| 18 | Id. Defendant further asserts plaintiffs' religion played no part in management's decision. Id. |
| 19 | Plaintiffs' FAC presents claims for (1) improper termination on the basis of religion and |
| 20 | gender in violation of Cal. Gov. Code § 12940(a); (2) improper termination in retaliation for |
| 21 | engaging in protected activity in violation of Cal. Gov. Code § 12940(h); (3) improper |
| 22 | termination on the basis of religion and gender in violation of Or. Rev. Stat. §659A.030(1)(a); (4) |
| 23 | improper termination in retaliation for engaging in protected activity in violation of Or. Rev. Stat. |
| 24 | §659A.030(1)(f); (5) improper termination on the basis of religion and gender in violation of Rev. |
| 25 | Code Wash. § 49.60.180(3); and (6) improper termination in retaliation for engaging in protected |
| 26 | activity in violation of Rev. Code Wash. § 49.60.210(1). ECF No. 28 at 6-10. |
| 27 | Plaintiffs served their Request for Production of Documents 1-22, Set One, and |
| 28 | Interrogatories 1-3, Set One, on November 11, 2017. ECF No. 37 at 2. Defendants submitted |

initial responses in December of 2017.  Id.  Plaintiffs served Interrogatories 4-7, Set Two, on December 7, 2017, and defendants served responses on January 11, 2018.  Id.  Plaintiffs contended defendants' responses were deficient and on January 19, 2018 sent a letter to meet and confer on responses to Interrogatories 1-7 and RFPs 1-13 and 15-22.  Id.  The parties met and conferred by letter, telephone, and e-mail in attempts to resolve the disputes.  Id.  Defendants served supplemental responses to Interrogatories 1-3, Set One, Interrogatories 4-7, Set Two, and supplemental documents to RFPs 1-22, Set One.  Id. at 2-3.

On May 2, 2018 defendants served a 29-page privilege log identifying documents withheld pursuant to attorney-client and attorney-work product privilege.  Id. at 3.  Plaintiffs contended the privilege log and the supplemental responses and document production were deficient and the parties continued to meet and confer by letters, telephone and e-mail in attempts to resolve the disputes.  Id.  Plaintiffs specifically requested additional responses to Interrogatories 3, 5 and 7, and supplemental productions with respect to RFPs 2-9, 15, 16, and 18-22.  Id.  Based on the parties' meet and confer efforts, defendants agreed to supplement responses to Interrogatories 3, 5 and 7.  Id.  On May 2, 2018, plaintiffs filed their notice of motion to compel, seeking to compel further responses to Interrogatory Nos. 3, 5 and 7, and requests for production 2 through 9, 15, 16, 18, 19 and 22.  ECF No. 34 at 1.

On May 8, 2018, defendants informed plaintiffs they had produced all documents responsive to RFPs 8, 9, 15, 16, 18, 19, and 21, except for signature block attachments and three hyperlinked invoices identified by plaintiffs, which defendants agreed to produce.  ECF No. 37 at 3.  Defendants agreed to conduct another search for responsive documents to clarify whether all documents were produced.  Id.  Defendants also agreed to verify its responses to these requests and to amend its privilege log.  Id.

Counsel conferred telephonically regarding supplemental responses, document production, and an amended privilege log.  Id.  Defendants produced additional documents on May 25, 2018.  Id. at 4.  Defendants have not produced the signature blocks and hyperlinked invoices, but have agreed to do so.  Id.  On May 28, 2018, defendants completed and served an amended privilege log consisting of 115 pages.  Id.

4

When the parties filed their joint statement on May 30, 2018, it addressed Interrogatories 3, 5, 7, and RFPs 2-9, 15, 16, and 18-22. ECF No. 37. Plaintiffs subsequently notified the court that they had received another supplemental production from defendants, and wished to limit the instant motion to the disputes regarding RFP Nos. 2-7 and 22.

## II. Standards

A. <u>Legal Standard on Motion to Compel</u>

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Federal Rules 33 and 34 provide that discovery requests must be responded to within 30 (or in some cases 45) days. <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1473 (9th Cir. 1992). In response to a request for production of documents under Rule 34, a party is to produce all relevant documents in his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery, <u>National Ass'n of Radiation Survivors v. Turnage</u>, 115 F.R.D. 543, 554– 56 (N.D. Cal. 1987), and, based on that inquiry, "[a] party responding to a Rule 34 production request... 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'" <u>Gray v. Faulkner</u>, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (citation omitted).

Under Fed. R. Civ. P. 37(a), a party may move for an order compelling disclosure or discovery if "a party fails to produce documents...as requested under Rule 34." Rule 37(a)(3)(B)(iv). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." See <u>Bryant v. Ochoa</u>, 2009 U.S. Dist. LEXIS 42339 at *3, 2009 WL 1390794 (S.D. Cal. 2009). The party opposing discovery is "required to carry a heavy burden of showing" why discovery should be denied. <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975).

B. Attorney-Client Privilege

The law of the forum state governs claims of attorney-client privilege in diversity cases. Fed. R. Evid. 501. Accordingly, California law controls here. See Home Indem. Co. v. Lane Powell Moss and Miller, 43 F.3d 1322, 1326 (9th Cir. 1995). California's law of attorney-client privilege is statutory. California Evidence Code § 954 confers a privilege on the client "to refuse to disclose . . . a confidential communication between client and lawyer." The party who seeks to invoke the privilege "must establish the preliminary facts necessary to support its exercise – i.e., a communication made in the course of an attorney-client relationship." Costco Wholesale Corp. v. Superior Court, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." Costco, 47 Cal. 4th at 733.

California law states that "[d]ocuments prepared independently by a party, including witness statements, do not become privileged communications or work product merely because they are turned over to counsel." Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal. App. 4th 110, 119 (1997). When information is collected to serve a dual purpose, one for transmittal to an attorney in the course of professional employment and one not related to that purpose, the question is which purpose "predominates." Costco, 47 Cal. 4th at 739-40. However, each document must be independently assessed. Wellpoint, 59 Cal. App. 4th at 122; see also Kaiser Found. Hosps. v. Superior Court, 66 Cal. App. 4th 1217, 1223 (1998).

C. Work Product Protection

The work product rule "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Admiral Ins. Co. v. U.S. District Court, 881 F.2d 1486, 1494 (9th Cir. 1989). Because it is not a privilege, it is not governed by state law in federal diversity cases. See Fed. R. Evid. 501. "Unlike issues of attorney-client privilege, issues concerning the work-product doctrine are procedural and thus governed by Federal Rule of Civil Procedure 26(b)(3)." Great

6

Am. Assur. Co. v. Liberty Surplus Ins. Corp., 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009).

To qualify for protection under the rule, documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative. In re California Pub. Utils. Comm'n, 892 F.2d 778, 780-81 (9th Cir. 1989). Protection is not absolute. "The Rule permits disclosure of documents and tangible things constituting attorney work product upon a showing of substantial need and inability to obtain the equivalent without undue hardship." Upjohn Co. v. United States, 449 U.S. 383, 400 (1981).

### III.     Analysis

A. RFP Nos. 2-7 Seek Relevant Documents, Most of Which Are Not Privileged

Plaintiffs' RFP Nos. 2-7, which seek documents related to Ryan's interviews of plaintiffs and subsequent communications about those interviews with WealthCounsel executives, are relevant and, with limited exceptions, do not request documents subject to attorney-client privilege. To the extent (if any) that these documents may constitute protected attorney work product, the protection is overcome by plaintiff's substantial need for the information. Accordingly, defendants must produce responsive non-privileged documents.

    1. RFP Nos. 2-7 Are Highly Relevant

The relevance of RFP Nos. 2-7 is not reasonably in question, and defendant has not disputed relevance. The court will nonetheless address the issue to frame the subsequent discussion, in which relevance and significance feature prominently. Discovery is obtainable as to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action ... and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. ("Rule") 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

////

RFP Nos. 2-7 seek documents regarding the substance and dissemination of the information plaintiffs gave in interviews to Ryan, which plaintiffs allege was the true basis for the decision to relocate their positions and ultimately terminate their employment. Specifically:

- Request No. 2 seeks documents in which Tamira Ryan documented her interviews with the plaintiffs.
- Request No. 3 requests documents reflecting Ryan's sharing with Jennifer Ellingson (WealthCounsel's head of Human Resources) or other persons any documents regarding those interviews.
- Request No. 4 requests documents reflecting the transmittal of Ryan's summaries of the interview to anyone, including Ellingson, Clegg or Pinegar.
- Request No. 5 requests documents reflecting communications by Ellingson on this subject, or her transmittal of any of Ryan's documents on the subject.
- Request No. 6 seeks documents reflecting the receipt of any of Ryan's documents about the Titus employment claims by Ellingson, Clegg, or Pinegar.
- Request No. 7 asks for any documents reflecting the transmittal of Ryan's documents about the Titus claim by anyone to Ellingson, Clegg, or Pinegar.

Each of these requests seeks information going to the very crux of plaintiffs' claims: what WealthCounsel's management team was told about plaintiffs' statements to Ryan, how that information was discussed, and whether management considered the information in the context of their decisions to re-locate the sales team and ultimately terminate plaintiffs. This material has strong probative value regarding defendants' motivation in altering plaintiffs' positions and ultimately terminating them. Plaintiffs having demonstrated relevance, it is defendant's "heavy burden" to show why discovery should be denied. Blankenship, 519 F.2d at 429.

2. RFP Nos. 2-7 Primarily Seek Non-Privileged Information

The information sought by RFP Nos. 2-7, with limited exceptions, is not subject to privilege and is discoverable. It is the burden of the party asserting the privilege to make a prima facie showing that attorney-client privilege exists. Costco, 47 Cal. 4th at 733. Defendants have not met that burden with respect to the vast majority of documents identified in the amended

8

privilege log, which are communications among non-attorney employees and executives rather than attorney-client communications.

Defendants' amended privilege log, Exhibit D to Joint Statement (ECF No. 37-2 at 77-192), is 115 pages long and identifies and describes 80 documents, all but one of which are emails. Plaintiffs have provided a summary of the log, Exhibit E (ECF No. 37-2 at 194-198), which the court finds to be accurate. Only three of the emails responsive to RFP Nos. 2-7 involve an attorney as addressee or author: Log Nos. 44, 72 and 73. All other communications are between and among WealthCounsel and Insperity non-attorney employees and executives. The one non-email item is Log No. 3, Ms. Ryan's internal investigation notes.

### a. Communications Among Non-Attorneys

Defendants contend, in the privilege log as in the joint statement and at hearing, that all the identified documents are privileged because they involve an investigation that was conducted by Ryan, a non-attorney employee in Insperity's EEO division, at the direction of counsel and for the purpose of seeking legal advice. See, e.g., Amended Privilege Log at 4-5 (ECF No. 37-2 at 81-82).[1] The court is unconvinced by this theory, for several reasons. First, defendants provide no evidentiary support for their factual assertion that Ryan conducted the investigation pursuant to instructions from counsel, and that her investigation was solely or primarily motivated by the need to defend Titus's legal claims. Plaintiffs, on the other hand, have provided evidence to dispute defendants' claim that the investigation was for the purpose of defending claims or obtaining legal advice. All three plaintiffs have submitted declarations in which they attest that Ryan told them her interviews were intended to determine whether a pattern of discriminatory

---

[1] "Attorney-client privilege; work product privilege— Insperity received notice of claims made by former employee Rose Titus (third-party) filed with the EEOC, and as a result, Ms. Ryan conducted an investigation of Ms. Titus' claims at the direction of inhouse counsel of Insperity and outside counsel Melick & Porter, LLP. Ms. Titus' employment at WealthCounsel ended in July 2015; counsel directed Ms. Ryan's investigation, which commenced in February 2016, in anticipation of and during litigation by Ms. Titus before the EEOC. Ms. Ryan's investigation was for the purpose of obtaining advice from counsel regarding next steps and defenses." This language is repeated almost verbatim throughout the privilege log. Neither the identity of the attorney(s), the date(s) of the instructions to investigate, nor any affidavits regarding the fact or details of counsel's instructions or the primary purpose of the investigation have been provided.

practices existed within WealthCounsel and, if so, recommend appropriate remedial measures. See Declarations of Laurie Nadeau, Dagny Magelssen and Robyn Coffin (ECF No. 37-1 at 1-18). Such an internal human resources investigation is independent of the defense of Titus's claims before the EEOC or in a court of law. Accordingly, the court cannot accept defendants' unsupported allegation that Ryan's investigation was conducted "for the purpose of obtaining advice from counsel regarding next steps and defenses." See ECF No. 37-2 at 79 and *passim*. Rather, the court finds that defendants have failed to meet their burden of establishing the facts necessary to support the claim of privilege.

Second, defendants cite only federal case law for the proposition that investigations conducted by a non-lawyer at the behest of a lawyer bring all resulting documents within the privilege. See Joint Statement, ECF No. 37 at 35-38; Amended Privilege Log, ECF No. 37-2 at 77-192, *passim*. The federal law of privilege has no application here. Defendants have thus failed to meet their burden, as the party asserting privilege, of supporting their claim with pertinent authority.

Third, even assuming that California extends the attorney-client privilege to communications with an attorney's agent, defendants have not established that Ryan (or any other employee or executive of WealthCounsel or Insperity) was communicating on behalf of counsel, or otherwise acting as counsel's agent, in regard to any of the specific communications at issue. Defendants essentially contend that if an attorney provided any direction to Ryan about her investigation into Titus's complaint, then any subsequent communication having to do with the investigation is privileged. Defendants have not identified authority establishing such a broad proposition.

At hearing on the motion, defense counsel suggested even more broadly that communications between Ryan and certain non-attorney Insperity executives come within the privilege because Insperity provided WealthCounsel with legal services as well as human resources services, and because the executives at issue were themselves responsible for communicating directly with counsel. This theory seeks to extend the cloak of attorney-client privilege much too far.

California's statutory privilege applies by its terms to communications between client and lawyer; it does not apply on its face to communications among non-lawyers regarding a matter in which lawyers are also involved. Defendants have not provided a legal or factual basis for application of the privilege to the communications among non-attorneys here. See Costco, 47 Cal. 4th at 733 (party asserting privilege must establish the preliminary facts supporting its exercise). Accordingly, the assertion of privilege fails and the motion to compel must be granted.

Even if defendants had made a prima facie showing of attorney-client privilege, plaintiffs have met their resulting burden of showing that the privilege does not apply. See id. "Documents prepared independently by a party, including witness statements, do not become privileged communications or work product merely because they are turned over to counsel." Wellpoint, 59 Cal. App. 4th at 119. When information is collected to serve a dual purpose, one for transmittal to an attorney and one not related to that purpose, the question is which purpose "predominates." Costco, 47 Cal. 4th at 739-40. These standards would apply to the transmittal and discussion of Ryan's interview notes if defendants were correct that her investigation is presumptively privileged. Id.; see also 2,022 Ranch, LLC, v. Superior Court, 113 Cal. App. 4th 1377, 1390-1395 (2003) (collecting cases and discussing "dominant purpose" test).[2] Plaintiffs have presented evidence that Ryan's purpose in interviewing plaintiffs was to identify any discriminatory practices within WealthCounsel and develop an internal corporate remedial plan if necessary. Nadeau Declaration at ¶ 6; Coffin Declaration at ¶ 7; Magelssen Declaration at ¶ 7. Plaintiff's evidence demonstrates that the internal corporate purposes for the investigation was, if not the sole purpose, at least on par with the intended (and undisclosed to plaintiffs) submission of Ryan's findings to counsel for the purpose of obtaining legal advice. The court cannot conclude on this record that the dominant purpose was to defend Titus's legal claims. Accordingly, the privilege would be defeated here even if defendant had made a prima facie showing of its applicability.

---

[2] The California privilege cases discussing dual purpose generally involve investigations or similar efforts conducted *by counsel*; the question is whether counsel's dominant purpose was related to the role of providing legal advice (in which case the privilege applies) or to a different function such as providing business advice (in which case the privilege does not apply). See id.

For all these reasons, attorney-client privilege does not protect communications between or among Ryan, Ellingson, Clegg and Pinegar, or other non-attorney employees and executives of WealthCounsel and Insperity. The court overrules defendants' assertion of attorney-client privilege as to all emails identified in the Amended Privilege Log with the exceptions of log nos. 44, 72 and 73, which are addressed below.

b. Log Nos. 44, 72 and 73

These items are emails between Jenny Ellingson of WealthCounsel and attorney Rebecca Bernhard. As communications between a client and lawyer, they are privileged. Cal. Evid. Code § 954. "[T]he [attorney-client] privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case." Gordon v. Superior Court, 55 Cal.App.4th 1546, 1557 (1997). Accordingly, the motion to compel is denied as to these emails.

c. Log No. 3

Log No. 3 is not an email, but a document consisting of "[i]nternal investigation notes" documenting Ms. Ryan's interviews with WealthCounsel employees on various dates between February 15 and May 20, 2016. Amended Privilege Log, ECF No. 37-2 at 81. Investigation notes are not themselves communications with counsel. Any transmission of the notes to counsel would constitute a privileged communication, Mitchell v. Superior Court, 37 Cal. 3d 591, 600 (1984), but Log No. 3 does not identify a transmission. Documents independently prepared by a party do not become privileged communications because they are later turned over to counsel, see Wellpoint, 59 Cal. App. 4th at 119. Accordingly, whether or not the notes were subsequently provided to counsel in privileged communications, the original notes are not privileged. See Greyhound Corp. v. Superior Court, 56 Cal.2d 355, 397 (1961).[3]

The notes identified as Log No. 3 constitute Ms. Ryan's work product, not a communication between client and attorney. Accordingly, defendants' assertion of attorney-

---

[3] "Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney.… While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney." Id.

12

client privilege is overruled and the motion to compel will be granted as to the notes.

   3. <u>RFP Nos. 2-7 Do Not Seek Information Protected By The Attorney Work-Product Doctrine; Alternatively, The Protection Is Overcome By Plaintiff's Showing Of Substantial Need</u>

Defendants invoke work product protection in addition to attorney-client privilege as to each of the 80 items identified in the privilege log, and on the same overarching ground: that the internal investigation was conducted for the purpose of obtaining legal advice regarding Ms. Titus's EEOC claim. ECF No. 37-2 at 77-192. As with the assertion of privilege, the assertion of work product protection is both overbroad and inadequately supported.

Defendants have not shown that any of the materials at issue were prepared "in anticipation of litigation or for trial." <u>See</u> Fed. R. Civ. P. 26(b)(3). All but one of the 77 non-privileged documents are emails between or among defendant corporations' employees and executives. While these emails likely relate (directly or indirectly) to matters which may reasonably have been expected to lead to litigation, there has been no showing that the individual communications themselves constitute documents prepared for purposes of litigation.

Log No. 3, the Ryan interview notes, is the one item which constitutes work product on its face, but it is human resources work product rather than attorney work product. For the same reasons that the court rejects defendants' argument that Ryan's investigation is protected by attorney-client privilege, the assertion of work product protection is also rejected.

To the extent that the interview notes were prepared for dual human resources and litigation purposes, the "because of" test governs protection under Rule 26(b)(3). <u>In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.</u>, 357 F.3d 900, 907 (9th Cir. 2004). Dual purpose documents are deemed prepared because of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." <u>Id.</u> In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." <u>Id.</u> at 908 (internal quotation

13

omitted). Here, particularly in light of the Nadeau, Magelssen and Coffin declarations, the court finds that defendants have not demonstrated that the interviews would not have been conducted but for the prospect of litigation. That is their burden as the parties seeking protection.

Even if the interview notes were prepared because of litigation, however, disclosure would be appropriate here because plaintiffs have made a persuasive showing of substantial need and inability to otherwise obtain the information. See Upjohn, 499 U.S. at 400. The same is true of the other non-privileged documents identified in the privilege log, assuming arguendo that they satisfy the Rule 26(b)(3) definition of work product. Here the court incorporates by reference its previous discussion of relevance. In sum, Ryan's investigation lies at the heart of plaintiffs' case, which alleges retaliation for statements made during plaintiffs' interviews with Ryan. The factual centrality and probative value of the information easily meets the Upjohn substantial need standard.

It is equally apparent that the information is not otherwise available to plaintiffs. While the individual plaintiffs were present at their own interviews, they have no other way of knowing what Ryan wrote down or otherwise documented about their statements, how that information was evaluated in light of the investigation as a whole, how it was conveyed to individuals responsible for subsequent adverse employment actions, and the extent to which it was discussed or considered.

For these reasons, any protection otherwise available under Rule 26(b)(3) is overcome and the non-privileged documents responsive to RFP Nos. 2-7 must be produced.

B. RFP No. 22 Seeks Relevant and Non-Privileged Information

Plaintiffs' Request for Production No. 22 seeks "any agreement between Rose Titus and defendants resolving claims of Rose Titus." This material is both relevant and discoverable. As discussed above, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Plaintiffs argue persuasively that the amount and terms of the settlement with Titus may have impacted the level of retaliatory animus, if any, WealthCounsel's management harbored against plaintiffs. ECF No. 37 at 95. Whether and to what extent

defendant was motivated by retaliatory animus in relocating plaintiffs' jobs and ultimately terminating them is a central issue in this case. Defendant's argument that it was planning to relocate plaintiffs' jobs even before Titus filed her EEOC complaint, and the two matters are therefore unrelated, id., goes to the merits of plaintiffs' claims and not to the discoverability of the Titus settlement.

Defendants' assertion of privacy "privilege" is likewise unavailing. Defendants' case citations from district courts in Pennsylvania notwithstanding, "there is no federal privilege preventing the discovery of settlement agreements and related documents." Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd., 253 F.R.D. 521, 523 (C.D. Cal. 2008) (citing JZ Buckingham Invest. LLC v. United States, 78 Fed. Cl. 15, 22 (Fed. Cl. 2007) ("The Court of Appeals for the Federal Circuit has provided little guidance on the extent to which settlement documents are protected from discovery as privileged. Further, there is no consensus among district courts on the existence of a settlement privilege."); Matsushita Elec. Indus. Co., Ltd. v. Mediatek, Inc., 2007 WL 963975, *2–4 (N.D. Cal. 2007). The Ninth Circuit has not imposed any special limitation on the discoverability of settlement agreements. See Big Baboon Corp. v. Dell, Inc., No. CV 09-01198 SVW, 2010 WL 3955831, at *3 (C.D. Cal. Oct. 8, 2010) ("Ninth Circuit law does not clearly recognize a broad settlement privilege[.]"). Especially in light of the long-standing general rule disfavoring privileges, see Jaffee v. Redmond, 518 U.S. 1, 9 (1996), the court overrules defendants' assertion of privilege and finds that no special settlement-specific limitation prevents discovery here.

Defendants' legitimate privacy interests are adequately protected by the Protective Order that is in place in this case. ECF No. 33.

For these reasons, RFP No. 22 seeks material that is relevant and non-privileged. The motion to compel production of responsive documents will accordingly be granted.

### IV.  Conclusion

For the reasons explained above, it is hereby ordered that plaintiffs' motion to compel, ECF No. 34, is GRANTED IN PART AND DENIED IN PART as follows:

1. Defendants' assertion of attorney-client privilege is sustained as to the documents

15

identified in the Amended Privilege Log as Nos. 44, 72, and 73, and is otherwise overruled;

2. The motion to compel is DENIED as to the documents identified in the Amended Privilege Log as Nos. 44, 72, and 73, and is otherwise GRANTED;

3. Defendants must produce, within 30 days of entry of this order, all documents responsive to RFP Nos. 2-7 and RFP No. 22, except those identified here as privileged.

IT IS SO ORDERED.

DATED: June 13, 2018

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE